to Thomas R. Mason v. Telefunken Semiconductors America, LLC, et al. Mr. Barnes. Good morning, Your Honor. May it please the Court. Before I begin, I'd like to reserve two minutes for rebuttal. You may have it. My name is Kenneth Barnes. With me at counsel's table is Attorney Ann Rice, my co-counsel. And we represent Tom Mason, who is in the second-to-last row. We appreciate the opportunity to speak to you this day. The parties have probably made this case seem more complicated than it really is, because there are two essential considerations in this court. One is that the trial court never made any decision at all about the cause of action relating to good faith and fair dealing, the claim that Telefunken breached its implied duty of good faith and fair dealing. On this issue, there is no district court judgment to be affirmed or reversed. Can we get to the basic contract questions and whether summary judgment should have been used as the vehicle to resolve these claims, please? Sure, glad to. So we think that the case should be remanded just at least for the good faith and fair dealing claim to be considered. On the summary judgment issue, which was granted as to all the remaining contract issues, the Court correctly stated the standard summary judgment standard of review. But in our view, the Court then didn't apply that standard properly to the circumstances of this case. Instead, the Court discounted or declined to consider at all certain evidence that favored Mr. Mason, the non-movement. Instead, the Court drew inferences in favor of Telefunken, the moving party, the party that moved for summary judgment. The Court drew inferences in favor of them and declined to draw other inferences, which were reasonable inferences a jury could draw, in favor of Mr. Mason. And because of that, the Court found itself determining facts, actually determining important material facts, and then applied the law to those facts. Get to the specifics, please. Gladly. Well, there were a number of factual disputes that actually were important to this case, which the Court decided for itself rather than leaving to the jury. The most obvious one... You've got three separate breach contract claims here. Yes. And it would be helpful not only if you would heed the Chief Judge's admonition and get the specifics, but if you would do so, identifying how the specifics relate, which claim the specifics relate to. Why don't you start first with your claim that what occurred December 31st, January 1st... Okay. ...constituted a termination within the meaning of the employment agreement. Exactly. And that is a factual determination, in our view. Even though construing a contract is a question of law, Your Honor, if the contract is not clear on its face or unambiguous, then you have to look to facts, such as what the parties intended when they talked about getting a severance package when you're terminated. If you look at the facts in the plain meaning of facts, termination, Mr. Mason's job at Tejas was terminated, effective December 31st. That's what Raj Johal, the president of Tejas, told him in early December, that your job will be terminated because we're merging with Telefunka. That is what the written documentation says, that you are terminated. And there's a new contract with Telefunken that tells Mr. Mason, we are offering you a new job at this new company. But this new contract does, in several places, refer to this as a transfer of employment, doesn't it? Well, actually, it doesn't do that in many places. It refers to it as, well, the new contract, whatever it talks about itself, there is an agreement called the transfer agreement. Yeah, that's what I'm talking about. Yeah, that was drafted by the lawyers, but it is not a transfer. Are you assuming that the original agreement wasn't drafted by lawyers? No, sir, I'm not. Although I think Raj Johal probably had. Why, you know, so why isn't this, as the district judge said, a transfer rather than a termination? Well, first of all, the president of the company said you're terminated from this company. Right. Second of all, there's no dispute by anyone, including Telefunken's lawyers and the court, the district court, there's no dispute that in any definition, either dictionary or employment case law or anything else, termination of employment means you're no longer working here. And there's no dispute that Mr. Mason was told you're no longer working at Tejas after December 31st. In fact, Tejas is going out of business and being merged with Telefunken. So there is no more Tejas and you're not working here. So if that's so, or if that is at least an interpretation that a reasonable fact finder could make, the next question then becomes why doesn't the release which Mr. Mason signed as concomitant with the transfer agreement or as part of the transfer agreement, whichever it was, why doesn't that release wipe away any claims for severance pay? Well, several reasons. And again, I'll settle for one if it's a good one. Settle for one. Okay. Mr. Mason signed the employee transfer, the so-called employee transfer and general release document and wrote on it, on its appendix, plaintiff's appendix at 22, page six of that release, knowing involuntary settlement, he wrote, except as amended in the amendment to the employment agreement. Because the initial offer by Telefunken was a job in which you're a totally at will employee with no rights whatsoever. And Mr. Mason said he wasn't going to take that job. He wanted his rights to the severance provisions, among other things, that are in his contract. And after negotiations between the parties, Your Honor, the Telefunken, the defendant, agreed to sign this contract. So he had only signed the release without adding the language. The argument would be better, but he added the language and there was a reason he added the language and it's up to a jury, not a judge, to determine what that reason was. Exactly. Okay. So what's the next prong of your argument? You must have a claim for non-renewal, where you say the non-renewal of the March 31 of the employment agreement was itself a termination, right? Yes. And that is because the, well, yes, the contract, the new contract, as you called it, the amended contract, which was part of Mr. Mason's contract with Telefunken, the new company, said that Telefunken was adopting all of the terms of the Tejas agreement. So the Tejas contract was now the Telefunken-Mason contract and it had all of the terms that were in the previous contract, including the ones that say if you're terminated for no cause, then you are entitled to one year of severance pay, unless it's a termination because of a merger, in which case it's two years of severance pay. But that agreement appeared on its face to treat termination and non-renewal as two separate events. They were in separate paragraphs, they were subject to separate time limits, and we were against the background of California law, which governs this contract, where California says, or its courts have said, that non-renewal is not termination. That is what California law says, Your Honor, I understand that. But I disagree with the part of what Your Honor said with respect that the contract talked about non-renewal and termination in different paragraphs. Yes, it mentioned non-renewal in some paragraphs and it mentioned termination in other paragraphs, but there's no reason to believe that the termination paragraph doesn't apply to lots of things that could happen in other paragraphs. If there was a disciplinary paragraph that talked about you can be fired for doing X, Y, Z bad things in a different paragraph and you're terminated for that, then the termination paragraph would seem to apply, or at least the language of termination, not without cause, perhaps. But what I'm saying is that both clauses need to be given effect and that in any event, a jury should be given the opportunity to decide that question. Exactly right, Your Honor. Exactly right. And my time is up. Do you want me to mention the third? Yes, please. So then at the February notification said that they were not renewing his contract as of March 31st, and so the question is what happened, what contract law or other law governs his employment from April 1st to May 17th? Just because one party says the contract is not being renewed, contract or other provisions apply. And Mr. Mason wrote frequently to... It does if the non-renewal is effective. If the non-renewal isn't effective, that's a different story. But if the non-renewal is effective, then that agreement is not renewed and there is no agreement. Correct. And I'm not arguing that the non-renewal is not effective. Okay, so there's no agreement. Correct. And I understand your client kept working and kept making requests for clarification of this and for assurances of that, which he never got, right? But someone who's working with no agreement, isn't that the classical definition of an at-will employee? Well, I think the courts look at what the terms that the people are working under are. What facts are they working under? He's working in the same job. He's getting paid this amount. He's getting this much vacation time. Are you suggesting he was not an at-will employee? And if so, what is the basis for that during that time period? Because during that time period, if they're working and there's no written contract, then the question is what's the understanding of what the terms and conditions of employment are? No, they're at-will. You have to give us something that says he's not an at-will employee at that point. What's the evidence? Well, the evidence is that he kept working and getting paid and they accrued the same amount of vacation time. That he's still under the old contract? That he's still under the portions of, how do we know which portions of the old contract are or are not governing the employment relationship, Your Honor? The employer said, we're not renewing. So what that means is you don't work here anymore. You're not getting paid anymore. You don't accrue vacation. You don't get any Okay, so April 1 comes and goes and everybody is working as if he's still here. He is doing the job. They're asking him to do the job. They're asking him to train their other employees and whatever. They're paying him. For anybody, any objective person looking at the party's actions, they can that the parties have unwrittenly agreed to a agreement about terms and conditions of employment, whether you call it a contract. I think it is. That is, it contains the same provisions unless the parties agree on changing certain provisions or they can fire him. They can say you can't work here anymore unless you agree to have no rights, none of your contract rights. But they didn't do that. They wanted him to stay. So they just were silent. Yes, but you're not talking about just any rights. What you're talking about is a severance claim. All right. Think about that until you get up again. Okay. Thank you. Thank you all. Good morning, Your Honor. Please, the court. My name is Irvin Gordon. I represent the Appalachee Telefunken in this matter. I'd like to address quickly, if I may, the point that was taken up at the tail end of Mr. Barnes' comments, because I think there's some confusion that needs to be clarified. Mr. Barnes, in his brief, has hypothesized three contracts. I think no analysis of the documents and the facts of this case will support that characterization. And this feeds into that last point. There were two contracts. It was the March 2009 letter agreement between Mr. Mason and his original employer, Tejas. And then in December of 2011, he entered into a further written agreement with the second employer. We understand that. We understand that. What there are here is three breach of contract claims. Exactly. All right. Exactly. So the claim is on the third contract, despite the non-renewal, and according to Mr. Barnes, even if the non-renewal was effective, there is still some sort of implied contract, other than an at-will relationship, that governs this last period of employment. Now that's his claim, as I understand it. And that's the claim you have to meet. I agree with you completely. In this case, there has consistently been a claim by the plaintiff of three points of contract breach. But I would submit to you, and I think the documents prove rather clearly, and certainly the trial judge understood, that there were only two contracts in play. Because to address this last point, after the issuance of the non-renewal of the March agreement in February of 2012, pursuant to its terms, that agreement, which had been explicitly adopted into the agreement incorporated and agreed to by the parties in December, ceased to operate by its own terms. That did not mean that there was no contract in place at that time, because you had this very detailed, very specific December 2011 agreement, which was explicitly and repeatedly acknowledged by the plaintiff to be an at-will employment agreement. Counsel, let me just tell you my view of this case. There are maybe just two contracts, but there are three periods of time that we are involved with. And plaintiff's theory of the severance he's owed and compensation he's owed is not an irrational it is not a claim that one could say no employer would ever enter. I consider that there is some extrinsic evidence. And what worries me is the district court having decided this on its own reading of the agreements with some possible misunderstanding of the importance of the release and his addition of language to the release. So for me the question isn't who's right about the contract reading, but whether the district judge should have been the one to make that reading. So if you could address your comments to that. Thank you. I think it's what the district court judge did was to examine the contract documents and concluded that in examining the contract documents with the undisputed facts that the party submitted to the court, reading those together, there was no need for him to inquire further to understand the true character of what had occurred. Yeah, but as to the character of what had occurred on December 31st, January 1st, the facts may have been undisputed, but the inferences that could reasonably be drawn from those facts weren't necessarily undisputed. I mean there was a termination that occurred here in one sense, and in another sense there wasn't a termination. You can look at this and you can argue quite plausibly, well he didn't lose his job, had same job, same benefits. On the other hand, he certainly wasn't working for Tejas anymore, right? And as to whether or not that's a jury question. Because there was no termination, no conclusion of the employment, as you just said. No, but there was a termination in the sense that he had terminated any employment with his original employer. It's clear, and the documentation from the employer described that as a termination. The exhibit that describes the older American's filing describes him, lists him as terminated. He was listed as terminated. We addressed that in our briefing, and briefly as our brief points out, that form, exhibit A to the transfer agreement and lease agreement, and those words we suggest in context have some importance, was a form which would apply equally in the situation of a transfer of all of those employees. That may be, that may be it would apply equally, but what my question, that doesn't get to my question. Why isn't that a question for the jury to decide what that word terminate signifies? Because that form, your honor, is an implementation document, which I believe the district court judge correctly concluded cannot by itself alter the terms of the parties contract. It can't by itself, but it is a piece of evidence as to what the parties intended when they used the word terminate. And why should it be the district court, when you said it can equally be as well be interpreted in two ways, why should it be the district court that chooses between those interpretations? I think the short answer to that, your honor, is that the author of that form was also the party quite involved in the contract documents. So the use of that form would not, as the district court judge concluded, be accorded weight in terms of the use of that term termination unless there were some It's the same approach that he took in the conclusory use of the insertion of that term in the affidavit, which the plaintiff obtained from the prior CEO, where the term was used, but it was not explained as to why it was deemed to be a termination and the characterization was completely inconsistent with the parties non-disputed contract documents. And your honor picked up on another point, which I want to address, and this has not been a primary focus of the brief, but the December 2011 agreement was explicitly conditioned on Mr. Mason's agreement that if he was coming to employer B, he was not Except that he made that handwritten addendum, which was accepted. Except as provided in the employment agreement. And that would have provided that going forward for the period permissible under that first agreement, it would continue to operate. But that's your construction of it. But why isn't it possible for a fact finder to say what that reservation means is that this court judge correctly concluded, if the claim for severance, which the plaintiff says approved on December 31, had occurred under that view of the case, then there would certainly have been a request for the plaintiff for the payment of it because the first agreement, the March 2009 agreement, provided that if there was severance to be paid because of a termination, it was payable on a biweekly basis. That's true. But was there any limitation on the time of making the claim? Well, the contract provided that it would be paid every two weeks. I know that. But was there any limit? But suppose an employer, forget this case, suppose an employer doesn't pay severance pay when it's due. What's the limitation on when the employee has to make, the ex-employee has to make the claim? Conventional controlling statute. That's right, which certainly isn't implicated in this case. Your Honor, if I may, as I started to point out, in December 2011, Mr. Mason could have exercised his rights under his March 2009 agreement and said, I view this as a termination. If that were his position at the time, his recourse, his remedy, his right under the agreement was to take that position and make that claim against the employer from whom he considered he had that entitlement. He chose not to do that in connection with an agreement in which Employer B said, we are happy to continue the same employment, but not if you bring forward claims from the prior period. Maybe, but he gives every indication by writing on the form attached to the transfer agreement that he does expect those obligations to be paid. He certainly did, Your Honor, and he certainly expected that agreement to be carried forward, but it wasn't enlarged or changed, nor did it revise the terms of the past. The December agreement, in one of its provisions, was that it was a period of employment for a specified term, which was at that point within two or three months of occurring, and that, in fact, is what occurred. Thank you. Thank you. Thank you, Your Honor. Just briefly, I've given Your Honor's question some thought. I think that the third period of time is the period of time which is governed by the breach of the duty of good faith and fair dealing. Because, as I said before, first, I think you have to look at what terms do govern the employment relationship during that period of time. That's the first thing. But second, the employer knew what it was doing when it arranged things in December the way that it did, and even the district judge, and I direct your attention to the appendix, the defendant's appendix, page 65, the court says, the purpose of the amendment, that's the contract amendment, the purpose of the amendment may have been to set the stage for the acquiring company to do exactly what it did, to take advantage. I mean, I know it's not pretty. So the judge recognized that, and again, Your Honor, it's at least a jury question, that the acquiring company, the Telefunken, knew what it was doing, arranged this whole set of three documents for the contract in December in order to do exactly what it did, take advantage of Mr. Mason. And so when you get to the time period where it's April 1st, and they want him to continue working and helping their company with the transition, they wanted to be in a position to say, so sorry, we don't have to pay you the severance agreement. And Attorney Yamaguchi, who wrote to Mr. Mason in, I think, the end of March, the last day of March, said that Raj Johal, the president of the company, was the one who told her to do it this way, that it was basically his intent in the first place. He's the guy who arranged it. All right, counsel. Thank you. But I have one further question. Has this case been through the CAMP program? We were invited. Yes or no? We spoke to him, but no. No. All right. Thank you.